# CAMILLE, Inc., v. F. W. FITCH CO.

District Court, S. D. Iowa,
Central Division.

May 19, 1939.

A. W. Murray, of Chicago, Ill., and Talbert Dick and Wm. N. Plymat, both of Des Moines, Iowa, for plaintiff.

Bair & Freeman, of Chicago, Ill., for defendant.

DEWEY, District Judge.

This action came on for hearing on its merits at Des Moines, Iowa, on the 26th day of April, 1939, and was submitted on April 29, 1939.

The basis of the claims of the plaintiff as against the defendant is that the latter has infringed certain letters patent and a trade mark owned by the former and for alleged unfair competition.

Camille, Inc., was organized in 1932 by Vera Camille Grote, who has been the moving spirit, both before and since its organization, in promoting and marketing its main product of a preparation for stopping runs in hosiery.

In 1932, or sometime prior thereto, she conceived the idea of putting such a product on the market with a general idea that it should be marketed in a small container that could be carried by women to be instantly applied should a break in the thread of a stocking occur. The product was of a sticky fluid character and her first attempts to market it in a small tube proved unsatisfactory as any escape of the fluid from the tube was injurious to the pocket or pocketbook in which it was being carried. Its distribution and sale in a tube appearing impractical, she worked out the idea of packing the tube in a vanity container.

With much experimentation, investigation, and ingenuity she adopted a small case, large enough to carry the tube wrapped in paper and of a size small enough to meet the requirements of her idea. The case was to have a top and bottom each of a different coloring. She then developed a design with which the case was to be decorated and this design was of such an ornamental character that she applied for and was granted thereon a design patent, being the one in suit. Her application for the patent was on October 6, 1933.

She worked out the trade name of "Run-R-Stop" which was clever both as a mark and in its euphonious arrangement, and on pronunciation it carried the meaning of stopping a runner in a stocking. The word "runner" has a definite mean-ing to women as a run in a silk stocking caused by a break of the thread. This trade name was registered in the United States Patent Office by an application of May 2, 1938, and upon her avowal that it had been in bona fide use exclusively by Camille, Inc., since on or about October, 1932.

In 1933 she put the combination of the ornamental design case enclosing the tube containing her preparation for stopping runs on the market and the product and general combination has met with great success in the trade and has enabled her to build up a business of quite substantial proportions.

Runs in stockings were prevalent and something that could stop the run at its beginning and prevent its enlargement and until opportunity was afforded to mend it was needed. Her main problem was to make her product known to the public and, as she puts it, to overcome sales resistance. This also required a great deal of ingenuity, work, planning, and expense, as the purchase price was small and volume of sales was required. Her main efforts in this regard, as I understand it, was done by window and counter displays, and to interest large department and chain stores to cooperate.

She advertised in national magazines, newspapers, display cards, circulars, display of the goods in open counters or racks in store windows and by various other sales methods.

Her efforts were so successful that sales of her product with its attractive combination of tube and vanity case have continually increased from 1933 to the present time, or until the interference by defendant's product, and department and chain stores all over the United States have accepted her product as a commodity nationally known.

She testifies that the total sales of her Run-R-Stop preparation for stopping runs in hosiery have been more than 10,000,000 units and that she has spent in advertising in excess of $150,000, and that the total combined issue of magazines and newspapers containing advertisements of Run-R-Stop product exceeds 200 million copies.

No other similar product, or combination of containers, was on the market until the defendant entered the field.

In 1938, the defendant company decided to put out a preparation to stop runs in

stockings and on or about March, 1938, they put out to the same character of trade, that is, through chain stores and department stores and places where women's hosiery is sold, a similar product.

This was done with full knowledge of plaintiff's product and the similarity of the preparation, its packing and display, its advertisement and efforts to cover the same field, are striking. Although not identical, the striking similarity is:

1st. A combination of a collapsible tube containing the mending material and enclosed in a small vanity case.

2nd. A package design in size and combination of colors and apparent material, combining attractiveness and convenience to carry in a handbag.

3d. The enclosure of the tube in paper wrappers containing directions for use and advertisement.

4th. The tube containing a similar liquid content with similar ingredients.

5th. The price prominently displayed.

6th. Display cards both small and large and advertisement and words used on the cards.

7th. The use of the trade name "Stop-A-Run" containing the same euphonious appeal as well as containing the same thought as plaintiff's "Run-R-Stop."

8th. The selection and use of the name Clem Chemical Company as a subsidiary of the defendant company to market the product.

9th. Sale to the same class of trade.

The plaintiff who owns all the rights of its organizer has by its efforts and ability of its promoters built up a business national, if not, international, in its scope, and although that business is not centralized in one place but has been built up through outlets in the towns and cities throughout the United States, yet it is still a business, and its tangible and intangible rights, including good will, are owned by the plaintiff company and, under the situation here presented, is entitled to prompt and efficacious equitable protection.

The defendant has not attempted to use the design upon which the plaintiff has an ornamental design patent but has contented itself with the use of a container or vanity similar in size, coloring and general appearance. Placed side by side it does not infringe plaintiff's patent.

Neither can it be said that the defendant is using plaintiff's trade mark and had the term "Stop-A-Run" been used on a different package and in an attempt to sell a different product, it might readily be said that it does not infringe plaintiff's trade mark.

Questions as to rights or lack of them obtained by the registration of "Run-R-Stop" are not necessary to be here determined as its use over a long period of years, and its secondary meaning of plaintiff's product, establishes, entirely apart from any trade mark act, the common law right of plaintiff's product and established good will to be free from the competitive use of these words as a trade mark or trade name.

As said by the Supreme Court in the Nu-Enamel case, decided by the Supreme Court of the United States, Dec. 5, 1938, under such circumstances, it is a protection against the unfair use as a trade name by a competitor seeking to palm off his product as those of the original user of the trade name.

Defendant selected as its trade slogan the words "Stop-A-Run". Were they so used as catch words for the sale of a base ball glove, no objection could prevail. But if used in a manner that would tend to mislead the public into a belief that in purchasing "Stop-A-Run" product they are buying "Run-R-Stop" product, then a serious question for defendant is presented. A trade mark which has come to have a secondary meaning of a manufacturer's product can be infringed by euphonious similarity of expression of an idea as well as by a similarity of copy.

We have here to determine whether the use made by defendant of its trade name "Stop-A-Run", and the similarity in the dress and design and methods of marketing its product, was a free, fair and open competition, or was intended to be, or was, in fact, unfair competition. I am satisfied, under the facts here found, it was the latter. The case appears to fall within the principle "that nobody has any right to represent his goods as the goods of somebody else."

Plaintiff's counsel has prepared and filed requested findings of fact and conclusions of law which, for the record, are overruled but many are adopted.

### Ruling on Defendant's Objections to the Form of the Decree.

In the above entitled action there came on for hearing in open court at Des Moines, Iowa, on the 18th day of May, 1939, certain objections on the part of the defendant to the form and substance of a decree proposed by the plaintiff and lodged in this court on May 13, 1939, and a request for a modification thereof.

The first request of the defendant that the decree should include an entry that the defendant has not infringed upon plaintiff's patent in suit is well taken, as this was contained in the court's memorandum opinion but inadvertently overlooked in its findings of fact.

As to item 2, the defendant proposes to include in the decree certain limitations which it is contended, if adopted by the defendant, would not constitute unfair competition.

I think this request should be denied.

Defendant contends that the court should determine whether a change in the general appearance and dress of defendant's product would free it from a charge of unfair competition in its distribution. One ground for this contention is that by this motion it is entitled to a declaratory judgment on the question; but I am satisfied that there is no controversy here that gives the court jurisdiction, but it is more, if not entirely, in the nature of a request for an opinion of the court.

The fact, if it be a fact, that the defendant has presented to the plaintiff's attorney on this date a full disclosure of how it intends to distribute its product with its proposed container and dress and a refusal by such attorney to agree that the articles and advertising now presented would not constitute, if sold by the defendant, unfair competition, hardly makes a controversy that requires decision by the court. The plaintiff would be in the same position as the court now finds itself should it approve the articles presented.

While I find myself in sympathy with that line of decisions which permit under certain circumstances a court to determine in the decree whether certain changes in a model, trade mark, or label, might not infringe, yet it is a matter of judicial discretion.

If the question were one alone of a change of a device which infringed, or of a trade mark, or of a label, such approval by a court of a change to meet the requirements of the law could be determined. But where, as in the case at bar, the court has determined unfair competition not only upon the product but also upon the method and manner of distribution, much more must be considered; for whether or not there is unfair competition may not be controlled alone by the name or appearance, but by the method and manner of the competition, and as to such matters the court should not prejudge or countenance by an act of judicial approval an object or product that might aid unfair competition, which it is endeavoring by the decree to prevent.

Under the history of this case I should not now approve a case or container of similar shape and design to that containing the plaintiff's product.

As to item 3, the suggestions that the decree should be modified to comply with United States Code, Title 15, Section 100, 15 U.S.C.A. § 100, is well taken, as is also the objection in item 4 that paragraph 8 of the proposed decree should be deleted.

As to item 5 of its objections, the defendant requests, in effect, that this court enter a stay of the injunction pending an appeal. For reasons, part of which are above stated, I do not believe that the injunction should be stayed by this court. If the Circuit Court of Appeals feels that its jurisdiction can be best protected by such a stay order, I think it should be done by that court rather than by the trial court.

The court has amended the proposed decree and same has been rewritten and this day filed.

To each of the foregoing rulings, the plaintiff and defendant except.